### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| JOSEPH WILKES, | CASE NO. 5:23-CV-01773-JRK |
| Petitioner, | JUDGE JAMES R. KNEPP, II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN TOM WATSON, | **REPORT AND RECOMMENDATION** |
| Respondent. |  |

## INTRODUCTION

Petitioner Joseph Wilkes, through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1, 1-2). The District Court has jurisdiction over the petition under § 2254(a), and the matter is referred to me to prepare a Report and Recommendation. (Non-document entry of Sept. 13, 2023). Respondent Tom Watson, in his official capacity as Warden for the North Central Correctional Complex (hereinafter, the State), filed the Return of Writ with the state court record. (ECF #7). Then Mr. Wilkes filed his Traverse. (ECF #10).

For the reasons below, I recommend the District Court **DISMISS** the petition as untimely. If timely, I recommend the District Court (i) **DISMISS** Grounds One and Two as stating claims not cognizable in habeas relief and (ii) **DENY** Grounds Three and Four as lacking merit. I further recommend the District Court **DENY** a certificate of appealability as to all grounds for relief. Finally, I **DENY** Mr. Wilkes's requests to conduct discovery and for an evidentiary hearing.

1

PROCEDURAL HISTORY

**A.    Trial court proceedings**

According to Mr. Wilkes, he made statements to the police on July 14, 1999. (ECF #7-1 at PageID 229). That same day, he was arrested and charged with the aggravated murder of Yvonne Layne. (ECF #7-1 at PageID 363).

On July 23, 1999, a grand jury in Stark County, Ohio indicted Mr. Wilkes for one count of aggravated murder with a death specification alleging the murder was committed for hire. (ECF #7-1 at PageID 88). At arraignment, Mr. Wilkes appeared with retained counsel and plead not guilty. (*Id.* at PageID 50). After receiving discovery materials, defense counsel sought permission to file appropriate pre-trial motions beyond the 35-day limit under Ohio Criminal Rule 12(B). (*Id.* at PageID 93-94, 364). In addition, on September 8, 1999, Mr. Wilkes applied for funds to hire a mitigation expert and a psychiatrist to assess evidence on his culpable mental state and assist in the mitigation phase. (*Id.* at PageID 96-100, 102-05).

Nineteen days later, Mr. Wilkes pled guilty to the indictment and death specification under a negotiated plea agreement. (*Id.* at PageID 110). In exchange for the State's agreement to forgo the death penalty or a sentence of life imprisonment without parole eligibility, Mr. Wilkes agreed to testify truthfully concerning Yvonne Layne's death and waive his right to appeal the sentence and "all other issues." (*Id.* at PageID 116). On October 7, 1999, under the terms of the plea agreement, the trial court sentenced Mr. Wilkes to life with parole eligibility after 30 years. (*Id.* at PageID 122).

Per the plea agreement, Mr. Wilkes testified at his co-defendant's trial and the jury convicted the co-defendant of aggravated murder and a murder-for-hire specification. *See State v.*

2

*Thorn*, No. 2003CA00388, 2004 WL 2980359, at *2 (Ohio Ct. App. Dec. 16, 2004). As summarized in the co-defendant's appeal, Mr. Wilkes testified to the following:

{¶7} In July, 1999, Mr. Wilkes confessed to the murder and implicated appellant, claiming that appellant paid him to kill Ms. Layne. Mr. Wilkes claimed that appellant wanted custody of his son, Brandon, and did not want to pay child support to Ms. Layne. Mr. Wilkes gave details on how appellant 1) planned the murder, 2) provided an alibi for himself, 3) provided Mr. Wilkes with a place to stay before and after the murder, 4) provided transportation to and from that location, and 5) provided money to purchase batting gloves and the knife used in the murder.

{¶8} Specifically, Mr. Wilkes testified at trial that he rented a room at the Comfort Inn at Carnation Mall in Alliance on March 31, 1999. He then purchased batting gloves and, later, a knife at the K Mart in the mall, walked to Ms. Layne's residence, and committed the murder. He told the police he threw the knife in a storm sewer near the house, and disposed of his gloves in a McDonald's dumpster. Mr. Wilkes claimed that the next morning appellant picked him up at the motel and took him to a friend's house. Mr. Wilkes hid his nylon pants, which he claimed he had worn at the time of the murder, in the woods near his friend's house.

{¶9} Mr. Wilkes took the police to a storm sewer where they recovered a knife and to where a pair of pants were found under some brush. The knife was consistent with the knife sold at K Mart, the knife shown to Mohr and Campbell and the murder weapon. The pants matched a description of the pants Mr. Wilkes was wearing at Carnation Mall the night of the murder.

{¶10} The knife and pants were tested for human blood. A preliminary test on the knife showed the possibility that there was human blood on the knife. However, further testing failed to return a positive result of human blood. No blood was found on the pants.

{¶11} However, the condition of the knife and pants was consistent with them having been subject to the elements for several months. According to testimony, this could have accounted for the failure to find blood on either item.

{¶12} In addition, there was testimony concerning the shoes worn by Mr. Wilkes on the night of the murder. Mr. Wilkes testified that he was wearing Nike shoes. A Detective from the Alliance Police Department testified at trial that as a result of the investigation, the Detective had a clerk at Dick's Sporting Goods identify the tread pattern of the shoe prints found in the blood. According to the Detective, the clerk provided the Detective with a shoe that "pretty much" matched the tread pattern. That shoe was a Nike.

*Id.* (citations omitted).

## B.    Direct Appeal

Over 22 years after his guilty plea, in July 2022, Mr. Wilkes, representing himself, filed a notice of appeal, an affidavit, and memorandum in support of his request for permission to file a delayed appeal in the Fifth District. (ECF #7-1 at PageID 125-41). The Fifth District denied the motion because Mr. Wilkes did not sufficiently justify his delay; it also concluded he was properly advised about the waiver of his right to appeal. (*Id.* at PageID 143-44).

Mr. Wilkes appealed to the Supreme Court of Ohio, advancing three propositions of law:

**Proposition of Law No. I**: Appellant's rights guaranteed through the Fifth and Fourteenth Amendments to the Constitution of the United States, Article I, Sections 5, 9, 10, and 16 of the Ohio Constitution, and as conferred by statute, were violated when the Court of Appeals erred by denying Appellant's App.R. 5(A) motion for delayed appeal because a right to delayed appeal exists in the State of Ohio.

**Proposition of Law No. II**: Appellant's rights guaranteed through the Fifth and Fourteenth Amendments to the Constitution of the United States, Article I, Sections 5, 9, 10, and 16 of the Ohio Constitution, and as conferred by statute, were violated when the Court of Appeals denied Appellant's App.R. 5(A) motion for delayed appeal because at least one issue proposed for appeal was an error of trial court jurisdiction which may be raised only on appeal.

**Proposition of Law No. III**: The Court of Appeals erred when denying Appellant's App.R. 5(A) motion for delayed appeal based on an unreasonable determination of facts in light of the evidence presented, in violation of the rights guaranteed through the Fifth and Fourteenth Amendments to the Constitution of the United States, Article I, Sections 5, 9, 10, and 16 of the Ohio Constitution, and rights conferred through statute.

(*Id.* at PageID 163). On April 11, 2023, the Supreme Court of Ohio declined to hear his appeal. (*Id.* at PageID 214).

C.     **Motion to Withdraw Guilty Plea**

Meanwhile, on November 7, 2022, Mr. Wilkes, representing himself, moved in the trial

court to withdraw his guilty plea. (ECF #7-1 at PageID 216-35). He raised several issues: (1) the

plea agreement is an unenforceable contract; (2) in the context of capital cases, the requirement

that sentence be determined by a three-judge panel is jurisdictional and cannot be waived; (3) he

was entitled to his requested mental evaluation; (4) the State withheld evidence in violation of

*Brady*; and (5) ineffective assistance of counsel for abandonment, failing to conduct a reasonable

investigation, failing to file adequate pretrial motions, failing to develop the record, not pursuing

the motion for appointment of a psychiatrist, and advising Mr. Wilkes to enter a plea that had no

benefit. (*Id.* at PageID 219-28). The trial court denied the motion. (*Id.* at PageID 360-61).

Mr. Wilkes appealed to the Fifth District, raising these issues:

Appellant should be permitted to withdraw his negotiated guilty plea because it was
accepted by a single judge instead of a three-judge panel. The failure to do so in
accordance with R.C. § 2945.06 and Criminal Rule 11(C)(3) means his plea was not
knowingly and intelligently made, and that failure rendered the trial court without
jurisdiction to take the plea.

Appellant's plea was not voluntary because he did not receive a psychological
evaluation.

The State withheld evidence from defense counsel.

Trial counsel was ineffective for failing to address the lack of a three-judge panel and
the psychological evaluation, failing to investigate the alleged missing evidence, and
for advising the appellant to take the plea.

*State v. Wilkes*, 252 N.E.3d 693, 697 (Ohio Ct. App. Sept. 24, 2024), *appeal not allowed*, 250 N.E.2d

152 (Ohio 2025) (table). The Fifth District affirmed and the Supreme Court of Ohio declined to

hear Mr. Wilkes's subsequent appeal. *Id.*

### FEDERAL HABEAS PETITION

Mr. Wilkes, through counsel, petitioned for a writ of habeas corpus. (ECF #1). The petition is largely blank and does not identify grounds for relief. In the attached memorandum in support, Mr. Wilkes raises four grounds: (1) the plea agreement is unenforceable, (2) the trial court did not have jurisdiction to accept the plea, (3) the State deliberately withheld evidence, and (4) counsel was ineffective. (ECF #1-2 at PageID 20). Drawing from the memorandum, these facts support Mr. Wilkes grounds for relief:

**Ground One.** Mr. Wilkes contends the plea agreement is unenforceable because it contravenes Ohio law and case law "prohibits any contract that contravenes existing state laws." (ECF #1-2 at PageID 29-30). First, he pled before a single judge contrary to Ohio Revised Code § 2945.06, which provides "[i]f the accused pleads guilty to aggravated murder, a court composed of three judges shall examine the witnesses, determine whether the accused is guilty of murder or any other offense, and pronounce sentence accordingly." (*Id.* at PageID 28). Second, he requested a mental evaluation but did not receive one contrary to Revised Code § 2929.03(D)(1), which provides that when imposing sentence for a capital offense "[a] presentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the defendant was tried by a jury, to the prosecutor, and to the offender or the offender's counsel for use under this division."

**Ground Two.** Mr. Wilkes next argues the trial court erred when it allowed him to waive his right to a three-judge panel and then sentenced him in the absence of a mental evaluation. (*Id.* at PageID 31). He describes both procedures as "critical jurisdictional protocols" and states the

trial court's disregard for these protocols "infringed upon Mr. Wilkes's rights outlined in Ohio law and established precedents." (*Id.*).

**Ground Three.** Mr. Wilkes also claims the State deliberately withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1953). The withheld evidence includes (1) Daniel Rogers, who observed an unidentified male entering the victim's home; (2) the victim's child identified "Jimmy" as the assailant; (3) George Hale, another witness who described an unidentified male exiting the house; and (4) Quentin Artis, a married police officer deeply involved with the victim. (*Id.* at PageID 33). He characterizes the purported evidence as exculpatory and argues "This evidential reservoir could have shifted the narrative arc, altered theories, and provided alternative interpretations." (*Id.*).

**Ground Four**. Last, Mr. Wilkes contends trial counsel was ineffective because testifying against his co-defendant stigmatized him within the prison system and the plea agreement "exacerbated every available sentencing option." (*Id.* at PageID 35). According to Mr. Wilkes, "[o]ne can say without equivocation that, under these circumstances, a pro-se trial would have produced a more favorable outcome." (*Id.*). He also claims trial counsel was ineffective for not exploring Mr. Wilke's mental and emotional conditions and not filing more pre-trial motions. (*Id.* at PageID 36).

Mr. Wilkes contends these errors require the immediate withdrawal of the plea agreement and asks the Court to "regard this motion as a pre-sentencing bid to withdraw the plea," or find that he has established manifest injustice to justify a post-sentence plea withdrawal. (*Id.* at PageID 37-38). He also requests an evidentiary hearing to develop the factual basis for his *Brady* claim and a period of discovery. (*Id.* at PageID 25, 38).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Wilkes's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not enough to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5

8

(2010)*; see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

That said, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as another state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome certain procedural barriers, including the statute of limitations. AEDPA establishes a one-year statute of limitations for an application for a writ of habeas corpus by a person in custody under the judgment of a state court. 28 U.S.C. § 2244(d). The strict filing deadline promotes the finality of convictions and curbs dilatory tactics. *Miller-El v. Cockrell*, 537 U.S. 322,

337 (2003); *see also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the one-year limitations period in § 2244(d)(1) meets the interest in the finality of state court judgments). The limitations period is not jurisdictional; it is an affirmative defense the responding party must raise in its first responsive pleading. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see also Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). When the State asserts the limitations period as a barrier to habeas relief and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—*i.e.*, equitable tolling and actual innocence—had not been satisfied).

AEDPA's statute of limitations period runs from the latest of four dates:

(A)     The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A state-court judgment becomes "final" on direct review for purposes of § 2244(d)(1)(A) when direct review concludes or the time for pursuing direct review in state court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

In some cases, the limitations period is tolled to allow courts to review an otherwise time-barred habeas petition. Under 28 U.S.C. § 2244(d)(2), the limitations period is paused while a

10

properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending. AEDPA's statute of limitations is also subject to equitable tolling, which allows the court to review a time-barred petition if the petitioner can demonstrate he diligently pursued his rights and some "some extraordinary circumstance stood in his way and prevented timely filing" of the habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Finally, a petitioner who presents a credible claim of actual innocence is entitled to equitable tolling of AEDPA's limitations period. *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005) ("where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims"). The exception is rare and only applied in extraordinary cases. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

## ANALYSIS

The State argues Mr. Wilkes's petition is untimely. (ECF #7 at PageID 65-70). Next, the State asserts Mr. Wilkes waived his *Brady* and ineffective-assistance claims relating to pre-plea deficiencies when he pled guilty. (*Id.* at PageID 76). Alternatively, the State asserts these two claims are meritless: First, as part of the guilty plea, the State argues Mr. Wilkes specifically waived a three-judge panel and a mental evaluation and, in any event, at the time of his conviction and appeal the trial court was not required to follow those death penalty procedures where the state agreed not to seek the death penalty. (*Id.* at PageID 77-78). Second, the State claims Mr. Wilkes cannot show that counsel performed deficiently in advising him to accept the negotiated plea agreement. (*Id.* at PageID 79).

11

Mr. Wilkes asserts he can overcome the untimeliness of his petition by a showing of equitable tolling and actual innocence. (ECF #10 at PageID 452, 455). He also claims the State's "reliance on the waiver of rights through a guilty plea overlooks the nuances" of his situation and claims the lack of a three-judge panel and mental examination casts doubt on the voluntariness of his plea. (*Id.* at PageID 452, 456). He also argues that "[i]f [his] counsel failed to adequately consider his mental health status or to advise him correctly about the plea's implications, this could significantly impact the plea's validity," and asserts that a reexamination of counsel's performance, "particularly in light of the critical mental health aspects, may reveal deficiencies that the initial proceedings overlooked." (*Id.* at PageID 453).

## A.     The petition is untimely under 28 U.S.C. § 2244(d).

The applicable start date for Mr. Wilkes's petition is the date his conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1] He did not appeal the trial court's judgment because he waived his right to appeal under the negotiated plea agreement. (ECF #7-1 at PageID 116). Because he did not appeal, the judgment became final 30 thirty days after the trial court journalized the sentencing entry, *i.e.,* November 8, 1999. *See* Ohio App. R. 4(A)(1). The one-year limitations period thus began running the next day and expired on November 9, 2000. *See* Fed. R. Civ. P. 6(a)(1) ("[I]n computing any time period . . . exclude the day of the event that triggers the period."). Mr. Wilkes's petition, filed September 12, 2023, is more than two decades late. Unless Mr. Wilkes can show entitlement to statutory or equitable tolling, his petition is untimely.

---

[1]     Mr. Wilkes does not assert entitlement to a later start date under §§ 2244(d)(1)(B), (C), or (D).

Statutory tolling applies to pause the limitations period while a properly filed application for state post-conviction relief or other collateral review remains pending. *See* 28 U.S.C. § 2244(d)(2). Tolling under § 2244(d)(2) only pauses a limitations period that has not fully run; it does not "revive the limitations period" or "restart the clock." *Eberle v. Warden, Mansfield Corr. Inst.,* 523 F.App'x 605 (6th Cir. 2013) (citation omitted). Mr. Wilkes sought review in the state courts after the limitations period expired. Thus, statutory tolling does not affect the limitations period.

Equitable tolling may save an otherwise untimely petition if the petitioner's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond the petitioner's control. *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011). Equitable tolling is applied sparingly. *Robertson v. Simpson,* 624 F.3d 781, 784 (6th Cir. 2010). For equitable tolling to apply, the petitioner must establish diligent pursuit of rights but "some extraordinary circumstance stood in his way," preventing timely filing. *Pace v. DeGuglielmo,* 544 U.S. 408, 418 (2005) (citation omitted). A petitioner need not show maximum diligence; all that is required is "reasonable diligence." *Holland,* 560 U.S. at 653.

Mr. Wilkes contends he is entitled to equitable tolling because he does not have adequate legal knowledge and trial counsel provided "misleading advice" that contributed significantly to his delayed understanding of his legal rights. (*See* ECF #10 at PageID 452). He does not specify the misleading advice he received or how it prevented him from filing a timely federal habeas petition. Because Mr. Wilkes has not presented a developed argument on the claim, he has waived it. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to .

. . put flesh on its bones."). Moreover, the Sixth Circuit has long held that a petitioner's claimed ignorance of the law alone does not warrant equitable tolling. *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir. 1991). This extends to ignorance of AEDPA's limitation period, *Allen v. Yukins,* 366 F.3d 396, 403 (6th Cir. 2004), and to ignorance or confusion about state appellate deadlines, *Thomas v. Smith,* 49 F.App'x 576, 578 (6th Cir. 2002) (holding petitioner's confusion concerning the correct time to appeal a state court decision does not warrant equitable tolling). Thus, Mr. Wilkes's limited legal knowledge is no basis for tolling the limitations period.

Mr. Wilkes also claims he is entitled to equitable tolling based on actual innocence. (ECF #10 at PageID 455). In *Schlup v. Delo*, the Supreme Court held that a petitioner asserting a credible claim of actual innocence can "avoid a procedural bar to the consideration of the merits of his constitutional claims." 513 U.S. at 327. Based on *Schlup*, the Sixth Circuit has held a petitioner who presents a credible claim of actual innocence is entitled to equitable tolling of AEDPA's statute of limitations. *Souter*, 395 F.3d at 601 ("where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims"). The exception is rare and only applied in extraordinary cases. *See Schlup*, 513 U.S. at 321; *see also Souter*, 395 F.3d at 590.

A credible claim for actual innocence justifying consideration of a time-barred habeas claim requires the petitioner present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup*, 531 U.S. at 316. The threshold inquiry is whether "new facts raise sufficient doubt about [the petitioner's] guilt to undermine the confidence in the

result of the trial." *Id.* at 317. The petitioner's evidence must include "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Although *Schlup*'s examples of new evidence "were not meant to be an exhaustive list of everything upon which an actual innocence claim may be based," *Souter*, 395 F.3d at 595 n.8, "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). "Actual innocence" means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

If a petitioner presents new reliable evidence to support a credible claim of actual innocence, the federal court must consider the fully developed record and the new evidence. *Schlup*, 531 U.S. at 329. "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 531 U.S. at 329). After reviewing all the evidence, if "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," the petitioner is entitled to a review of the merits of his underlying constitutional claim. *Schlup*, 531 U.S. at 327.

The standard is difficult to meet. Supreme Court and Sixth Circuit case law provide examples of the amount and kind of evidence necessary to meet this high burden. In *Souter*, the Sixth Circuit held the petitioner met the actual-innocence standard where he presented compelling proof that a bottle—the only direct evidence linking him to the death—could not have caused the victim's injuries. *See* 395 F.3d at 596-97. The Sixth Circuit relied on affidavits from trial witnesses who retreated from or recanted their original testimony, a report from a forensic scientist

who examined the bottle and autopsy photos and found no sharp edges or protuberances that could have caused the wounds shown in the photos, and photos of the victim's clothing that were unavailable at trial. *Id.* at 590-92. The victim's clothing, allegedly covered in blood, contradicted the State's argument that the absence of blood on Mr. Souter was consistent with the absence of blood on the victim. *Id.* at 592. This evidence, taken together, chipped away at the slim circumstantial evidence on which Mr. Souter was convicted. *Id.*

In *House*, the Supreme Court concluded the petitioner satisfied his burden by presenting evidence challenging the central forensic proof (blood and semen) connecting the petitioner to the crime and substantial evidence pointing to a different suspect. *See* 547 U.S. at 540-54. The Court noted it was a close call, acknowledging some aspects of the State's evidence still supported an inference of guilt, but the existence of evidence undermining the forensic proof, and the petitioner's production of evidence from multiple sources suggesting that the victim's husband regularly abused the victim were sufficient for the Court to conclude that, had the jury heard all the conflicting testimony, it was more likely than not that no reasonable juror viewing the record as a whole would have found the petitioner guilty beyond a reasonable doubt. *Id.* at 553-54.

In this case, Mr. Wilkes offers the following evidence to support his actual innocence: a witness observed an unidentified male entering the victim's home, another witness observed an unidentified male exiting the victim's home, the victim's 4-year-old child claimed that "Jimmy" pushed the victim, and the victim was involved with a married police officer. (ECF #10 at PageID 455). These same pieces of evidence underlie Mr. Wilkes's *Brady* claim.

I find Mr. Wilkes has not presented a credible claim of actual innocence because he has not shown the proffered evidence is reliable. First, the allegation about the police officer's

16

relationship with the victim is speculative. Mr. Wilkes has not identified the proponent of the information or how the relationship was relevant to the crime. The child's purported statement similarly bears no temporal information to suggest that "Jimmy's" actions were relevant to the victim's death. None of the purported eyewitness statements are supported by signed affidavits from the witnesses. Nor does Mr. Wilkes offer contemporaneous information that reasonably shows the evidence is relevant to his conviction. Without context, it is impossible to determine when the two unidentified people were seen at or near the victim's home. If, for instance, the witnesses saw someone near the residence days before or days after the victim's death, that would clearly not be reliable evidence suggesting actual innocence. These sorts of vague statements are not enough to establish actual innocence. *See Allen v. Harry,* 497 F.App'x 473, 480 (6th Cir. 2012) (stating that "the affidavits are devoid of detail . . . , and as such, lack the necessary 'probative force' to establish that they represent new, trustworthy eyewitness accounts that may serve to buttress his claim").

At most, the alleged evidence presents the barest possibility of other suspects. The Sixth Circuit has held that information about other suspects that "does not even indirectly link any of the suspects to the murder" is "simply too remote to have been exculpatory or to undermine confidence in the verdict." *Apanovitch v. Houk,* 466 F.3d 460, 484 (6th Cir. 2006) (considered in context of a *Brady* claim). The evidence is not enough to establish it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, and thus he has not shown actual innocence to overcome the untimeliness of his petition. *McQuiggin v. Perkins,* 569 U.S. 383, 400-01 (2013).

Mr. Wilkes has not established the existence of an extraordinary circumstance that prevented him from filing a timely federal habeas petition nor has he presented new, reliable evidence to support his claim of actual innocence. As a result, he is not entitled to equitable tolling and so his petition is untimely under § 2244(d)(1). For that reason, I recommend the District Court **DISMISS** his petition.

B.    **Merit Analysis**

1.    **Grounds One and Two are state law claims not cognizable on federal habeas review.**

In his first ground for relief, Mr. Wilkes claims the plea agreement is unenforceable because a single judge accepted it and did so without conducting a mental evaluation. He alleges Ohio's statutory laws and criminal rules mandate a three-judge panel (Ohio Rev. Code § 2945.06, Criminal Rule 11(C)(3)) and a mental examination (Rev. Code § 2929.03(D)(1)). (ECF #1-2 at PageID 28). In Ground Two, he claims the trial court lacked jurisdiction to accept the plea agreement in the absence of a three-judge panel and a mental evaluation. (*Id.* at PageID 30-31).

Because these claims do not challenge the legality of Mr. Wilkes's custody based on federal constitutional violations, they are not cognizable on federal habeas review. *Smith*, 371 F.App'x at 582. While habeas relief may be available if a petitioner shows the alleged error of state law subjected the petitioner to a "fundamentally unfair" process, *Williams*, 460 F.3d at 816, Mr. Wilkes has not shown the absence of either procedure fits within the narrowly defined category of infractions that violate fundamental fairness. *See Bey*, 500 F.3d at 521. Rather, he asserts that because a three-judge panel and a mental evaluation "were essential elements of the legal process at the time of [his] plea, their omission might represent more than mere procedural errors. They could impinge on the plea's lawfulness, casting doubt on the legitimacy of the entire judicial

process in his case." (ECF #10 at PageID 460). The Fifth District addressed Mr. Wilkes's state-law challenge to the absence of a three-judge panel:

> Appellant first argues he should be permitted to withdraw his negotiated guilty plea because it was accepted by a single judge instead of a three-judge panel. We addressed a similar argument in *State v. Dull*, 5th Dist. Stark No. 2019CA00158, 2020-Ohio-4229, 2020 WL 5056795, at ¶ 19. R.C. 2945.06 provides, "if the accused pleads guilty of aggravated murder, a court composed of three judges shall examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly." Pursuant to Criminal Rule 11(C)(3), with respect to aggravated murder:
>
>> If the indictment contains one or more specifications that are not dismissed upon acceptance of a plea of guilty or no contest to the charge, or if pleas of guilty or no contest to both the charge and one or more specifications are accepted, a court composed of three judges shall: (a) determine whether the offense was aggravated murder or a lesser offense; and (b) if the offense is determined to have been a lesser offense, impose sentence accordingly, or (c) if the offense is determined to have been aggravated murder, proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly.
>
> {¶19} Appellant contends that because the trial court failed to convene a three-judge panel in accordance with R.C. 2945.06 and Criminal Rule 11(C)(3), his plea was not knowingly and intelligently made, and the failure rendered the trial court without jurisdiction to take the plea. Appellant cites the Ohio Supreme Court's case of *State v. Parker* in support of his argument. In *Parker*, the Ohio Supreme Court held that a defendant charged with a crime punishable by death who has waived his right to a jury trial must, pursuant to R.C. 2945.06 and Criminal Rule 11(C)(3), have his case heard and decided by a three-judge panel even if the State agrees that it will not seek the death penalty.
>
> {¶20} However, at the time of appellant's plea (September 27, 1999), *Parker* had not yet been decided and the law in this district was established by *State v. Griffin* . . ., in which we held that the trial court was not required to follow death penalty procedures where the State of Ohio agreed not to request the death penalty. At the time of appellant's plea, the caselaw in this district established that when a defendant agreed to forego his right to a jury trial in exchange for the prosecutor's agreement not to pursue the death penalty, the case could be heard by a single judge. The *Griffin* case was not overruled by *Parker* until 2002.

{¶21} Thus, based upon the caselaw at the time of appellant's plea, and at the time appellant would have appealed his sentence, the failure to convene a three-judge panel was not reversible error and Ohio law provided that special procedural protections associated with a capital offense were required only when the death penalty could be imposed. "That this law may have changed a decade or more later does not justify * * * abandoning the law in place and the convictions based on it at the time of trial" and the fact that the law may have changed in 2002 does not mean appellant had a valid ground for appeal in 1994. *Id.*

*Wilkes,* 252 N.E.3d at 698-99 (citations omitted). On habeas review, this Court is bound by the state court's interpretation of Ohio law in place at the time of Mr. Wilkes's plea. *See Bradshaw,* 546 U.S. at 76. Therefore, the Fifth District's conclusion that failure to convene a three-judge panel under state law was not reversible error is controlling.

Mr. Wilkes also asserts the absence of a three-judge panel and mental evaluation undermines the voluntariness of his plea, but he makes no effort to explain how. (ECF #10 at PageID 452, 456). In any event, the record shows Mr. Wilkes entered his guilty plea voluntarily and intelligently, with full awareness of the consequences. The Supreme Court describes a guilty plea as "a grave and solemn act" when the defendant both "admi[ts] in open court that he committed the acts charged in the indictment" and waives the right to trial before a judge or jury. *Brady v. United States,* 397 U.S. 742, 748 (1970). So "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* Thus, to be valid, a guilty plea must be accompanied by an affirmative showing that it was intelligent and voluntary. *Boykin v. Alabama,* 395 U.S. 238, 242 (1969). In *Brady v. United States,* the Court established the following guideline for evaluating the voluntariness of a plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper

20

harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

397 U.S. at 755. Under this standard, a plea of guilty is not invalid simply because the defendant entered the plea to avoid the possibility of the death penalty. *Id.*

In the Sixth Circuit, "[w]hen a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The transcript of Mr. Wilkes's plea hearing is extensive. First, the State read into the record the terms of the negotiated plea agreement:

> The Defendant shall enter a plea of guilty to the offense of Aggravated Murder, one count, Revised Code 2903.01(A), with Death Penalty Specification, Revised Code 2929.04(A)(2), and shall be sentenced pursuant to Revised Code 2929.03(D)(3)(iii), to life imprisonment with parole eligibility after serving 30 full years.
>
> The Defendant shall testify truthfully and with complete disclosure in any and all proceedings concerning the death of Yvonne Layne. If the Defendant fails to testify truthfully and with complete disclosure in any and all proceedings concerning the death of Yvonne Layne, the State of Ohio may void this plea agreement.
>
> All fines will be waived.
>
> The Defendant specifically waives his right to have his sentence determined by a three-judge panel pursuant to Revised Code 2929.03(C)(2)(b)(i), and accepts the sentence as outlined in this negotiated plea.
>
> Pursuant to negotiated plea agreement and Section 2953.08(D) of the Ohio Revised Code, the Defendant, upon pleading guilty to the charged offense and attendant specification and receiving the sentence outlined above, waives his right to challenge on appeal the sentence imposed in this case. In addition, Defendant waives his right to appeal on all other issues.
>
> The Defendant, having been informed of his right to a sentencing hearing, waives his right to such a hearing.

21

In consideration for entering the plea of guilty to the indictment, accepting the sentence as stated in this negotiated plea agreement, and promises to testify truthfully and with complete disclosure in any and all proceedings concerning the death of Yvonne Layne, the State of Ohio will not seek the death penalty or a lifetime prison sentence without parole eligibility.

If any other sentence is imposed by the Court, other than outlined above, or is modified by any reviewing court, this negotiated plea agreement shall be null and void, and the Defendant shall be prosecuted pursuant to the indictment filed in this case. The Defendant shall be subject to all possible penalties according to law, including the death penalty.

(ECF #7-2 at PageID 377-80). The trial court confirmed Mr. Wilkes understood the charge and the death-penalty specification, the elements of the crime, the State's burden of proof at trial, the two-phased system for capital cases and the use of mitigation evidence if found guilty, the possible sentences the court could impose, the terms of the plea agreement, and the trial rights he would waive if he pled guilty. (*Id.* at PageID 382-413). The trial court also explained to Mr. Wilkes the appellate rights he would by pleading guilty:

**The Court**: Do you understand that by pleading guilty to each count or to the one count and to the specification contained in the indictment that you are making a complete admission of your guilt and you are waiving or giving up any right to appeal any of the errors or decisions which may have been made or could be made if you elected to proceed to trial; do you understand that?

**The Defendant**: Yes, sir.

**The Court**: These would include possible errors committed by the police; do you understand that?

**The Defendant**: Yes, sir.

**The Court**: Errors committed by the Prosecuting Attorney; do you understand that?

**The Defendant**: Yes, sir.

**The Court**: Errors committed by your Defense attorneys; do you understand that?

**The Defendant**: Yes, sir.

**The Court**: And errors committed by this Court. Do you understand that?

**The Defendant**: Yes, sir.

(ECF #7-2 at PageID 420-21). The trial court verified Mr. Wilkes and his counsel reviewed 32 potential motions including a motion to suppress, he understood why they were not filed, and he was satisfied with trial counsel. (*Id.* at PageID 421-25). Finally, Mr. Wilkes affirmed he was entering his plea voluntarily. (*Id.* at PageID 430-31). He then pled guilty to the charge and death-penalty specification (*id.* at PageID 432) and, in accordance with the negotiated plea agreement, the trial court imposed a life sentence with parole eligibility after 30 years (*id.* at PageID 438-39). The transcript shows Mr. Wilkes knew of the direct consequences of his plea, understood the waiver of his right to appeal, and his decision was not induced by threat, misrepresentation, or improper promises. Thus, he voluntarily entered his plea.

In addition, the Fifth District determined "[t]he trial court fully apprised appellant of the constitutional rights he was giving up in pleading guilty, and appellant unambiguously indicated the voluntary, intelligent, and knowing nature of his plea." *Wilkes,* 252 N.E.3d at 701. The state court's determination that Mr. Wilkes made his plea voluntarily, intelligently, and knowingly is a factual finding. *Parke v. Raley,* 506 U.S. 20, 35-36 (1992). This Court must presume the state court's factual findings are correct, and the presumption is rebuttable only by a petitioner's showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Because Mr. Wilkes has failed to show clear and convincing evidence to the contrary the presumption remains unrebutted.

23

If the District Court finds Mr. Wilkes's petition is timely, I recommend the District Court **DISMISS** Grounds One and Two because they are state-law claims not cognizable on federal habeas review.

### 2.      Ground Three is meritless.

In Ground Three, Mr. Wilkes claims the State deliberately withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1953). The allegedly withheld evidence is the same evidence Mr. Wilkes contends supports his actual innocence. That evidence includes: (1) Daniel Rogers, who observed an unidentified male entering the victim's home; (2) the victim's child named "Jimmy" as the assailant; (3) George Hale, another witness who described an unidentified male exiting the house; and (4) Quentin Artis, a married police officer deeply involved with the victim. (*Id.* at PageID 33). Mr. Wilkes characterizes the purported evidence as exculpatory but does not explain how these pieces of evidence were favorable to him or how they undermine confidence in the verdict. Instead, he argues "[t]his evidential reservoir could have shifted the narrative arc, altered theories, and provided alternative interpretations." (*Id.*). The State, citing *United States v. Ruiz,* 536 U.S. 622 (2002), contends Mr. Wilkes waived his *Brady* claim when he pled guilty. (ECF #7 at PageID 75). Alternatively, the State argues the right to receive exculpatory *Brady* material before entering a guilty plea is not clearly established federal precedent under § 2254(d)(1). (*Id.* at PageID 76). Accordingly, the State maintains Mr. Wilkes cannot demonstrate the state court's decision denying his motion to withdraw his guilty plea based in part on a *Brady* claim was contrary to clearly established Supreme Court precedent. (*Id.*).

In *Brady v. Maryland,* the Supreme Court held that the defendant's due process right to a fair trial requires the government disclose evidence favorable to the accused and "material either to

guilt or punishment." 373 U.S. at 87. Under the *Brady* rule, the government must "disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley,* 473 U.S. 667, 675 (1985). The duty encompasses impeachment and exculpatory evidence. *Id.* at 676. To establish a *Brady* claim, the proponent must show the evidence was favorable to the accused, either because it is exculpatory or impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. *Strickler v. Green,* 527 U.S. 263, 281-82 (1999). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Parting from the conventional prejudice analysis, the Supreme Court instructs:

> [T]he materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."

*Strickler,* 527 U.S. at 290 (citations omitted).

The *Brady* rule applies to a defendant who goes to trial and later discovers the government withheld favorable evidence that "if disclosed and used effectively," may make the difference between conviction and acquittal. *Bagley,* 473 U.S. at 676 (citation omitted). But does *Brady* extend to a defendant who pled guilty? In *United States v. Ruiz,* the Supreme Court considered whether the Constitution requires federal prosecutors to disclose "impeachment information relating to any informants or other witnesses" before entering into a plea agreement with the defendant. 536 U.S. 622, 625 (2002). The Court held the Constitution does not require that disclosure. *Id.* The Court

25

did not have the occasion to determine whether that requirement extended to exculpatory evidence because the plea agreement specified that the government would provide "any information establishing the factual innocence of the defendant." *Id.,* 536 U.S. at 631.

Whether the *Ruiz* holding extends to exculpatory material remains an open question. Within the Sixth Circuit, courts interpreting *Ruiz* have reached opposing conclusions. Some courts have determined *Ruiz* itself suggests the holding extends to exculpatory as well as impeachment evidence, pointing to the Court's reasoning that *Brady* is grounded in a defendant's due process right to a fair trial. *McClellan v. Rapelje,* No. 2:09-CV-10617, 2010 WL 5294366, at *12 (E.D. Mich. Nov. 15, 2010); *Byrd v. Scutt,* No. 10-11823, 2013 WL 5348703, at *9 (E.D. Mich. Sept. 24, 2013) ("the Supreme Court in *Ruiz* emphasized the *Brady* rule's connection to the truth-finding function of a trial as the rationale behind their decision, which suggested that the holding in *Ruiz* extends to exculpatory substantive evidence as well"). Another court determined the holding in *Ruiz* does not foreclose the possibility of a *Brady* violation where a prosecutor does not disclose exculpatory information before the defendant pleads guilty. *Ransaw v. Lucas,* No. 1:09-cv-02332, 2013 WL 6179418, at *8 (N.D. Ohio Nov. 25, 2013). Other courts acknowledge the opposing arguments but do not decide the issue. *E.g., Prince v. Cook,* No. 3:13-cv-01051, 2014 WL 4956455, at *26-27 (N.D. Ohio Sept. 30, 2014).

But resolving Mr. Wilkes's petition does not require deciding whether the government must disclose exculpatory material before entering into a plea agreement with the defendant-petitioner. Even assuming the requirement exists, the Fifth District addressed Mr. Wilkes's argument that the government withheld this evidence and reasonably determined "nothing indicates that the prosecutor withheld *Brady* material in the present case." *Wilkes,* 252 N.E.3d at

700. In his motion to withdraw the guilty plea, Mr. Wilkes speculated the State withheld the evidence but failed to bolster that assertion with a showing that the State possessed the evidence in the first place. (ECF #7-1 at PageID 224-27). Though brief, the Fifth District's conclusion is a reasonable interpretation of federal precedent and is based on a reasonable determination that Mr. Wilkes failed to prove the requirements of a *Brady* claim. *See Strickler,* 527 U.S. at 281-82 (establishing a *Brady* claim requires the proponent to show the evidence was favorable to the accused, either because it is exculpatory or impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued).

For these reasons, I recommend the District Court **DENY** the claim in Ground Three as meritless.

### 3.     Ground Four is meritless.

In his last ground for relief, Mr. Wilkes alleges trial counsel's deficient performance violated his Sixth Amendment right to counsel. (ECF #1-2 at PageID 34). He claims trial counsel erred in advising him to plead guilty, stating, "one can say without equivocation that, under these circumstances, a silent pro-se trial would have produced a more favorable outcome." (*Id.* at PageID 35). He challenges counsel's failure in not pursuing to completion the motions counsel filed seeking funds to hire a mitigation expert and a psychiatrist to assess evidence of his culpable mental state and assist in the mitigation phase. (*Id.* at PageID 34). Mr. Wilkes also claims trial counsel erred in filing only five motions and did not "investigate [Mr. Wilkes's] complex mental history and background." (*Id.* at PageID 36). In the Traverse, he states counsel's failure to pursue critical pre-trial motions could have affected the plea agreement and sentencing. (ECF #10 at PageID 456). He adds "[i]f counsel neglected to investigate critical evidence or explore viable

27

defenses," the performance could fall below the objective standard of reasonableness. (*Id.* at PageID 459). The State contends that by pleading guilty, Mr. Wilkes waived his claims that counsel failed to investigate. (ECF #7 at PageID 75).

The two-part *Stickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). First, a defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Usually, the defendant must then show prejudice, characterized as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. But when a defendant enters a guilty plea and subsequently claims ineffective assistance of counsel, the prejudice requirement focuses on whether counsel's constitutionally deficient performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. "In other words, to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Both *Strickland* prongs must be satisfied for a petitioner to succeed on an ineffective assistance of counsel claim; hence, the petitioner's failure to satisfy one prong means the other need not be considered. *Strickland*, 466 U.S. at 697.

Moreover, if the claim was properly presented and decided on the merits in a state court, the petitioner must also show the state court's resolution of those issues was unreasonable. *Harrington*, 562 U.S. at 88; *see also Hale v. Cool*, 122 F.4th 637, 646-47 (6th Cir. 2024) (noting that the combination of both AEDPA and *Strickland* results in a "doubly" deferential standard). When considering an ineffective-assistance-of-counsel claim under AEDPA, the question is not whether

counsel's actions were reasonable, but whether there is *any* reasonable argument that counsel satisfied *Strickland*. *Harrington*, 562 U.S. at 105. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. The Supreme Court has also emphasized the extraordinary deference to be afforded trial counsel in plea bargaining. *See Premo v. Moore*, 562 U.S. 115, 124-25 (2011).

I agree with the State: Mr. Wilkes waived his claim asserting that counsel failed to investigate crucial aspects of his case. This is because a guilty plea forecloses any claims about the pre-plea deprivation of constitutional rights. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of his guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. In other words, a defendant who pleads guilty generally waives any non-jurisdictional claims that arose before the plea. Accordingly, Mr. Wilkes's claims that counsel did not investigate or pursue a psychological examination before the plea are foreclosed by his guilty plea and do not warrant habeas relief. *See Cook v. Wolfenbarger*, No. 2:10-cv-12747, 2012 WL 3113183, at *6 (E.D. Mich. July 31, 2012) (concluding petitioner's claim that counsel was ineffective in failing to investigate his case, discuss a diminished capacity defense, or take other action during the pre-trial period is foreclosed by his plea).

If the District Court concludes Mr. Wilkes's claims are not foreclosed by his plea, the petitioner is still not entitled to habeas relief because he has not shown the state court's adjudication of the claims (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d). The Fifth District addressed Mr. Wilkes ineffective-assistance claims and first determined Mr. Wilkes's assertion that a psychological report would have resulted in a more favorable outcome was speculative and "[c]ounsel could have reasonably decided to proceed with the plea agreement absent a psychological investigation, which may have delayed or compromised their attempts to save appellant's life by removing the death penalty from the sentencing equation." *Wilkes*, 252 N.E.3d at 699-700. Next, the Fifth District court rejected Mr. Wilkes's assertion that he would have received a better outcome by representing himself at trial and sitting silent, noting "[i]t is impossible to take appellant's contentions seriously; charged with a death eligible offense, his agreement to testify against the co-defendant who hired him to commit the murder was integral to the plea agreement sparing appellant's life." *Id.*, 252 N.E.3d at 700. The Fifth District's decision on Mr. Wilkes's federal constitutional claims comports with clearly established federal law and he has failed to show the Fifth District's adjudication was unreasonable.

Mr. Wilkes also asserts trial counsel was ineffective for recommending he plead guilty rather than preparing a defense, but he has not established that counsel failed to investigate his case or was deficient in advising him to accept a plea that avoided a potential death penalty. True, trial counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case,

or to make a reasonable determination that such an investigation was unnecessary. *See Strickland*, 466 U.S. at 690-91; *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006). But counsel's strategy in pursuing a plea and foregoing other avenues of defense was reasonable given the nature of the case and Mr. Wilkes's confession. Mr. Wilkes has not shown that counsel erred or acted unreasonably in advising him to plead guilty to the indictment with an agreed-upon life sentence with parole eligibility to avoid the possibility of a death sentence. As a result, habeas relief is unwarranted on his claims alleging ineffective assistance of trial counsel. Therefore, I recommend the District Court **DENY** these claims as meritless.

**C.      Mr. Wilkes is not entitled to discovery or an evidentiary hearing.**

**1.      Discovery is not necessary.**

Mr. Wilkes requests a period of discovery. (ECF #1-2 at PageID 25). "Habeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6 of the Rules Governing Section 2254 Cases permits a petitioner "to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford*, 266 F.3d at 460.

A petitioner establishes good cause by "point[ing] to specific evidence that might be discovered that would support his constitutional claims. . . ." *Burns v. Lafler*, 328 F.Supp.2d 711, 718 (E.D. Mich. July 26, 2004) (citing *Marshall v. Hendricks*, 103 F.Supp.2d 749, 760 (D.N.J. 2000), *rev'd in part on other grounds*, 307 F.3d 36 (3rd Cir. 2002)). Rule 6 illustrates the principle that a court must provide discovery in habeas proceedings only "where specific allegations before the

31

court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d at 460; *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) ("Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact.").

The State argues Mr. Wilkes is not entitled to discovery under Rule 6 because he did not specify the reasons or the claims for which, discovery is necessary. (ECF #7 at PageID 80). In his response to the State's opposition, Mr. Wilkes does not attempt to articulate good cause. Rather, he appears to argue he has a right to discovery without making a show of good cause:

> In addressing the government's argument against the discovery request in Mr. Wilkes' habeas corpus petition, one must scrutinize the underlying principles of justice and fairness in the judicial process. The government's stance emphasizes procedural norms, potentially overshadowing the substantive rights at the heart of Mr. Wilkes' claims. By focusing primarily on technicalities and the lack of specificity in Mr. Wilkes' request, the argument risks minimizing the importance of discovery as a tool for uncovering critical information that could substantiate claims of injustice or constitutional violations.
>
> The essence of a fair legal process lies in ensuring all relevant evidence receives consideration. The government's argument, while adhering to procedural requirements, seems to prematurely dismiss the potential impact of discovery in habeas corpus cases. Discovery, a critical component of the judicial process, serves not as a mere formality but as a means to unearth evidence that may significantly influence the outcome of a case. Mr. Wilkes' inability to specify what he might uncover through discovery should not automatically preclude him from the opportunity to explore crucial evidence. In many complex legal cases, the full significance of certain evidence only becomes clear after a thorough investigation, which discovery facilitates.

(ECF #10 at PageID 462-63) (cleaned up). Mr. Wilkes has not shown good cause by pointing to specific evidence that might be discovered that support his constitutional claims and instead makes only conclusory allegations that discovery might reveal some information that might support a possible constitutional violation. This is not enough under *Stanford*. Accordingly, I **DENY** his request for discovery.

### 2.    No evidentiary hearing is warranted.

In his petition, Mr. Wilkes requests a hearing to develop the factual basis for his *Brady* claim. (ECF #1-2 at PageID 38). A habeas petitioner is generally entitled to an evidentiary hearing in federal court if he "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford*, 266 F.3d at 459. But if the petitioner has failed to develop the factual basis of a claim in state-court proceedings, the petitioner must show diligence or meet the requirements of § 2254(e)(2). Under § 2254(e)(2), a petitioner who failed to develop the factual record in the state courts due to his own lack of diligence will not be given an evidentiary hearing unless he shows that (A) the claim relies on a new rule of constitutional law or a factual predicate that could not have been discovered through the exercise of due diligence; or (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found petitioner guilty of the underlying offense.

"Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams v. Taylor*, 529 U.S. 362, 435 (2000). In the usual case, diligence requires that the prisoner, at minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.* at

437. In Ohio, a trial court must hold a hearing on a defendant's post-sentence motion to withdraw a guilty plea if the facts, as alleged by the defendant and accepted as true, would require the court to permit the plea to be withdrawn. *State v. May*, 884 N.E.2d 607, 684 (Ohio Ct. App. 2008) (citation omitted). The court need not hold an evidentiary hearing if the record shows the defendant is not entitled to relief and failed to submit evidentiary documents sufficient to demonstrate a manifest injustice. *Id.* (citation omitted). In this case, the trial court declined to hold an evidentiary hearing because Mr. Wilkes "offer[ed] mostly unsupported theory and speculation, and his self-serving affidavit d[id] nothing" to persuade the court that his claims were meritorious. (ECF #7-1 at PageID 361). On this record, I find Mr. Wilkes failed to develop the factual basis of his *Brady* claim in state court and has not shown diligence in pursuing the claim.

It is also clear that Mr. Wilkes does not meet the requirements under § 2254(e)(2). First, relevant to § 2254(e)(2)(A), his *Brady* claim does not rely on a new rule of constitutional law or a factual predicate that could not have been discovered through the exercise of due diligence. Second, under § 2254(e)(2)(B), he has not shown the facts underlying his claim are enough to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. My analysis of the alleged facts underpinning Mr. Wilkes's *Brady* claim in the sections analyzing actual innocence and Ground Three support this conclusion. Therefore, Mr. Wilkes is not entitled to an evidentiary hearing to develop the factual basis of his *Brady* claim.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised

on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (1) the petition states a valid claim of the denial of a constitutional right and (2) the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cocktrell*, 537 U.S.322, 337 (2003).

Mr. Wilkes has not made a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the petition is untimely or the grounds for relief are valid claims of the denial of federal constitutional rights. Therefore, I recommend the District Court **DENY** Mr. Wilkes a COA with respect to any ground for relief.

### CONCLUSION AND RECOMMENDATIONS

For these reasons, I recommend the District Court **DISMISS** Mr. Wilkes's petition as untimely. If the petition is timely, I recommend the District Court (i) **DISMISS** Grounds One and Two as stating claims not cognizable in habeas relief and (ii) **DENY** Grounds Three and Four as lacking merit. I further recommend the District Court **DENY** a certificate of appealability as to all grounds. Finally, I **DENY** Mr. Wilkes's requests to conduct discovery and for an evidentiary hearing.

Dated: April 28, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).